UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Commodity Futures Trading
Commission and New Hampshire
Department of State, Bureau
of Securities Regulation

    v.                         Civil No. 05-cv-210-JD
                             Opinion No. 2006 DNH 019
Cromwell Financial
Services, Inc. et al.


O R D E R

The defendants move to transfer this action, brought under
sections 6c and 6d of the Commodity Exchange Act, 7 U.S.C. §§
13a-1 and 13a-2, to the United States District Court for the
Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[1]
The plaintiffs, who are the Commodity Futures Trading Commission
(the "CFTC") and the New Hampshire Department of State, Bureau of
Securities Regulation (the "BSR").


Background

The plaintiffs accuse the defendants, Cromwell Financial
Services, Inc., and five of its directors and managers, of
soliciting trades in options on commodity futures through false
and misleading representations.  Cromwell, a Florida corporation,

---

[1]In the alternative, the defendants seek to stay this action
pending the resolution of a complaint brought against some of
them in the Business Conduct Committee of the National Futures
Association, which assertedly arises out of the same conduct.

has its main office in Deerfield Beach in that state and has branch offices in three other Florida cities.  Cromwell has a branch in Fort Lauderdale, which until January 2004, was managed by defendant Dennis Gee; in Boca Raton, which is managed by defendant Richard Peluchette; and in Pompano Beach, which is managed by defendant Richard Astern.  Defendant Phillip Tuccelli, Cromwell's founder and sole shareholder, runs the Deerfield Beach office.  Cromwell's director of compliance is defendant Michael Staryk.  All of these men reside in southern Florida.

Allegedly, Cromwell employees at each of the firm's Florida offices made "cold calls" recommending investments in particular options, touting sizeable returns coupled with minimal risk. These representations were false, the plaintiffs allege, because, among other reasons, "the market in options on commodity futures is highly speculative and the likelihood of realizing the described profits within the described periods was remote at best."  Compl. ¶ 26(e).  Cromwell's relatively steep commissions--allegedly as high as $230 per contract traded in some cases--further hurt its customers' returns.  In fact, according to the plaintiffs, at least 85 percent of Cromwell's customers closed their accounts with the brokerage at a loss. The plaintiffs allege that, through these representations, Cromwell convinced some 900 people to trade in commodities futures contracts.  These customers lost approximately $19

million as a result.

In their complaint, the plaintiffs charge that (1) Cromwell and Tuccelli engaged in fraud and attempted fraud in connection with commodity option transactions in violation of 17 C.F.R. § 33.10 and (2) all of the defendants failed to supervise their employees in violation of 17 C.F.R. § 166.3, allowing them to make misrepresentations to investors.  The plaintiffs seek a number of remedies, including an injunction forbidding the defendants from further violations of CFTC regulations and "any activity relating to commodity interest trading," Compl. § V.B.2, disgorgement of their allegedly ill-gotten gains and restitution of those monies to the claimed victims, and monetary penalties. The parties resolved the plaintiffs' motion for a temporary restraining order, filed with the complaint, by stipulating to an order enjoining the defendants from violating certain CFTC regulations or destroying any of their business records.

The complaint does not identify any of the defendants' 900 alleged victims, except to say that they "includ[e] New Hampshire residents."  Compl. ¶ 2.  In their opposition to the motion to transfer, the plaintiffs represent that "at least four" of the claimed victims reside in New Hampshire, and "[m]ore may reside in nearby states, and . . . thus within driving distance," but "none . . . are known to reside within the Southern District of Florida."  Opp'n Mot. Transfer at 6, 8.  The plaintiffs do not

further identify any of the alleged victims in their opposition.
Together with their motion for a temporary restraining order,
however, the plaintiffs submitted a variety of evidentiary
materials naming some of these claimed victims.  Of the ten such
people whose locations can be discerned from those materials, two
reside in New Hampshire and one resides in Connecticut, while the
others live in California, Texas, or Wyoming.[2]

The defendants, meanwhile, have augmented their transfer
motion with an affidavit from Tuccelli, who states that, though
Cromwell has customers throughout the United States, all of its
"customer files and records" and "officers, corporate
representatives, and employees" are in southern Florida.
Tuccelli Aff. ¶¶ 7-9.  Tuccelli also claims that "[t]raveling to
New Hampshire for a trial which may last weeks would be unduly
burdensome both in terms of transportation costs for Defendants'
witnesses, counsel, and records, as well as in terms of
disruption to Defendants' business resulting from the prolonged
absence of key personnel."  Id. ¶ 11.


## Discussion

"For the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil

---

[2]Generally, these materials do not give the alleged victim's
present location, but his or her address on file with Cromwell,
the CFTC, or the BSR at the time of the events at issue.

action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). The parties appear to agree that this case "might have been brought" in the United States District Court for the Southern District of Florida, which would have subject matter jurisdiction and venue over the action and personal jurisdiction over the defendants. See 17 James Wm. Moore et al., Moore's Federal Practice § 111.12[1][a] (3d ed. 2004). The parties disagree, however, on whether "the convenience of the parties and witnesses" or "the interest of justice" counsel in favor of transferring this action there.

Whether to transfer an action pursuant to section 1404(a) lies within the broad discretion of the court. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 739-40 (1st Cir. 1977); Adam v. Hawaii Prop. Ins. Ass'n, 2005 DNH 48, 2005 WL 643358, at *2 (D.N.H. Mar. 21, 2005); 17 Moore, supra, § 111.13[1][a], at 111-65. In deciding whether to exercise this discretion to transfer a case, the court considers a number of factors, including the convenience of the parties and witnesses and the availability of documentary evidence in each forum. Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (citing Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987)). Courts have also weighed a number of additional integers, including where the events at issue in the litigation took place, the relative cost of trying the case in each forum, and the

public interest in having local controversies adjudicated locally.  17 Moore, supra, § 111.13[1][b], at 111–67.

The burden of justifying a change of venue under section 1404(a) rests with the party seeking it.  Coady, 223 F.3d at 11. Indeed, "there is a strong presumption in favor of the plaintiff's choice of forum."  Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  But the strength of this presumption should not be overestimated.  As this court has observed, the Supreme Court's oft-cited decision in Gulf Oil did not consider the standard for transferring a case under section 1404(a), which did not yet exist at that time, but for dismissing a case under the common-law doctrine of forum non conveniens. Slattery v. Walt Disney World Co., 2003 DNH 213, 2003 WL 22888860, at *3 (D.N.H. Dec. 8, 2003).  Because transfer amounts to a less severe remedy than dismissal, the Supreme Court has reasoned that section 1404(a) "permit[s] courts to transfer upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."  Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955); see also 17 Moore, supra, § 111,03[2], at 111–35.

The defendants argue that "the three substantive criteria set forth in § 1404(a) weigh heavily in favor of transferring this case to the Southern District of Florida."  Mot. Transfer at

4.  First, the defendants contend that they face "an enormous inconvenience," in terms of expense and disruption to their business, in traveling and transporting their business records here from Southern Florida for a trial which the parties have agreed will take between two and four weeks.  Id. at 4-5.  The defendants suggest that, in contrast, the CFTC will experience "at most, a marginal inconvenience" in litigating this action in southern Florida, as opposed to in New Hampshire.  Id. at 4.

The plaintiffs do not dispute this point.  Indeed, one court has noted that the CFTC's "almost exclusive practice" of bringing enforcement actions "in a district where the defendant was incorporated or had an office . . . at least hints that the CFTC derives little added convenience from trying a case" in any particular district.[3]  CFTC v. First Nat'l Monetary Corp., 565 F. Supp. 30 (N.D. Ill. 1983); see also CFTC v. Delay, 2005 WL 2810755, at *3 (N.D. Ill. Oct. 25, 2005) (reasoning that CFTC's "authority to pursue actions such as this across the country" results in little inconvenience from transfer).  Thus, rather than arguing that transferring this case would put the CFTC out, the plaintiffs plead inconvenience to the BSR, who would suffer a "drain on its limited financial resources to litigate this matter in Florida."  Opp'n Mot. Transfer at 6.

---

[3]The defendants, in fact, cite a number of unrelated CFTC actions brought against Florida corporations and residents in the Southern District of Florida.  Mot. Transfer at 7-8.

The court believes, however, that the BSR's resources can be preserved through an appropriate allocation of the burdens of prosecuting this case between the BSR and the CFTC.  Although the BSR has a legitimate interest in asserting the rights of the New Hampshire residents allegedly defrauded by the defendants, <u>see</u> 7 U.S.C. § 13a-2(1), those residents number but four of the defendants' 900 claimed victims, by the plaintiffs' own estimate. New Hampshire citizens therefore comprise less than one-half of one-percent of those injured by the defendants' charged conduct.[4] Given New Hampshire's relatively limited interest in this matter, the CFTC, rather than the BSR, should be expected to bear the vast majority of the expenses in litigating the action, particularly those incurred in connection with appearing for judicial proceedings.[5]  Transferring this case to Florida, then, should not inconvenience the BSR as a practical matter.

In a related vein, the plaintiffs insist that the deference owed their selection of a New Hampshire forum overcomes any

---

[4]The plaintiffs do not suggest that New Hampshire residents accounted for a disproportionately large share of the $19 million in losses attributed to the defendants' alleged scheme.  The two New Hampshire investors who swore out declarations in support of the plaintiffs' motion for a temporary restraining order claim to have lost approximately $40,700 between them.

[5]For example, deposing the defendants in Florida--which the plaintiffs acknowledge as a possibility even if the case remains in New Hampshire, Opp'n Mot. Transfer at 6--would most efficiently be handled by the CFTC, to save the BSR the expense of traveling to Florida for that purpose.

inconvenience to the defendants from keeping the case here.  The
plaintiffs argue, in fact, that their choice deserves added
weight because they brought this action pursuant to the broad
venue provisions of the Commodity Exchange Act, under which venue
lies, <u>inter alia</u>, in the district where the act or practice
allegedly violating the statute "occurred."  7 U.S.C. §§ 13a-1(e)
<u>and</u> 13a-2(4).  Some courts, considering the analogous venue
provision of the Securities and Exchange Act of 1934, 15 U.S.C.
§ 78aa, have indeed accorded particular respect to the SEC's
decision on where to bring an enforcement action.  <u>See</u>, <u>e.g.</u>, <u>SEC
v. Rose Fund, LLC</u>, 2004 WL 2445242, at *2 (N.D. Cal. Jan. 9,
2004); <u>SEC v. Elecs. Warehouse, Inc.</u>, 689 F. Supp. 53, 74 (D.
Conn. 1988) (citing <u>S-G Secs., Inc. v. Fuqua Inv. Co.</u>, 466 F.
Supp. 1114, 1122 (D. Mass. 1978)).  Other courts, however, have
reasoned that "[a]s a federal regulatory agency, the SEC does not
need the same inducement to enforce the securities laws" as
private parties do and that any special deference given the
plaintiff's choice of venue under section 78aa should therefore
not extend to the SEC.  <u>SEC v. Captain Crab, Inc.</u>, 655 F. Supp.
615, 617 n.1 (S.D.N.Y. 1986) (citing cases); <u>see also</u> <u>SEC v.
KPMG, LLP</u>, 2003 WL 1842871, at *4 (S.D.N.Y. Apr. 9, 2003); <u>SEC v.
Ernst & Young</u>, 775 F. Supp. 411, 413 (D.D.C. 1991).

　　The court considers this reasoning persuasive and concludes,
as a result, that the plaintiffs' choice of venue here deserves

no particular weight.[6]  See CFTC v. Savage, 611 F.2d 270, 279
(9th Cir. 1979) ("the CFTC's choice of forum is entitled to some
weight") (emphasis added).  Furthermore, courts generally place
less importance on this factor where the operative events did not
take place in the plaintiffs' chosen district, even where one of
the plaintiffs resides there, as the BSR does in this case.
17 Moore, supra, § 111.13[1][c][iii], at 111-70.  While the
defendants directed their allegedly misleading solicitations into
New Hampshire, as well as a number of other states, the
solicitations emanated from the defendants' offices in Florida.
As just discussed, New Hampshire citizens comprise only a small
percentage of those harmed by the defendants' allegedly
fraudulent activity.

Moreover, the defendants' alleged failure to supervise the
employees who made the solicitations constitutes the plaintiffs'
only theory of liability against four of the six defendants; that
alleged failure to supervise occurred in Florida.  Thus, although
venue over this action lies in this district under the broad
provisions of the Commodity Exchange Act, the facts giving rise
to the plaintiffs' claims have no strong connection to this
forum, rendering their decision to bring suit here less deserving

---

[6]Although Captain Crab considered only whether a federal
regulatory agency, such as the SEC or the CFTC, should be
accorded particular deference in choosing venue, its reasoning is
equally applicable to a state regulatory agency like the BSR.

of deference.  SEC v. Pignatiello, 1998 WL 293988, at *6
(S.D.N.Y. June 5, 1998); see also SEC v. Kasirer, 2005 WL 645246,
at *2; (N.D. Ill. Mar. 21, 2005); Ernst & Young, 775 F. Supp. at
416; SEC v. Thayer, 1984 WL 2404, at *2 (S.D.N.Y. Mar. 16, 1984).

     Of course, the fact that most of the operative events
underlying the plaintiffs' claims happened in Florida means that
many of the witnesses to those events are there as well.  17
Moore, supra, § 111.13[1][c][iii], at 111-71.  As this court has
observed, "the convenience of witnesses is one of the most
significant factors to be considered in any analysis under
section 1404(a)."  Adam, 2005 WL 643358, at *4 (citing Buckley v.
McGraw-Hill, Inc., 762 F. Supp. 430, 440 (D.N.H. 1991)).  The
defendants state that most of their witnesses, who they identify
as their officers and employees, are concentrated in southern
Florida, while the plaintiffs' witnesses, who presumably include
allegedly defrauded Cromwell customers, are dispersed throughout
the country.  Accordingly, the defendants argue that New
Hampshire provides a less convenient forum for their witnesses
than south Florida, while the districts are equally inconvenient
for the bulk of Cromwell's customers, who will have to travel
from their homes to the courthouse regardless of the forum.[7]

---

     [7]The defendants also point out that their client files and
other business records, which would likely comprise part of the
documentary evidence in this case, are located in Florida.  The
court agrees with the plaintiffs, however, that this fact
deserves little weight, given the ease of preparing and
transmitting exhibits with contemporary technology.

In response, the plaintiffs simply repeat their claim that "[a]t least four" of the defendants' alleged victims reside in New Hampshire and speculate that "[m]ore may reside in nearby states, and thus within driving distance . . . ." Opp'n Mot. Transfer at 8.  The materials submitted with the plaintiffs' motion for a temporary restraining order, however, identify just two Cromwell customers from New Hampshire and only one more from a nearby state, Connecticut.

In any event, few if any of the alleged victims can testify in detail about the defendants' failure to supervise their employees, which, again, constitutes the plaintiffs' only claim against four of the defendants; most of the testimony on that subject would have to come from Cromwell's employees or others familiar with its operations.  The court concludes that the District of Southern Florida would provide a considerably more convenient forum for the witnesses in this action than this district would.[8]  See First Nat'l Monetary Corp., 565 F. Supp. at 31 (finding, in CFTC enforcement action charging fraudulent marketing practices, that convenience of witnesses favored transfer where officers, employees, and outside firm who

---

[8]The plaintiffs' argument that the defendants "will hardly be inconvenienced at all by the maintenance of this matter in the District of New Hampshire as they will be deposed, if at all, in Florida," Opp'n Mot. Transfer at 6–7, ignores the general preference for live trial testimony.  See Kasirer, 2005 WL 645246, at *3 ("One of the aims of § 1404(a) is to minimize the risk of trial by deposition.") (internal quotation marks omitted).

developed and implemented practices were in transferee district,
while only four alleged victims resided in transferor district);
17 Moore, supra, § 111.13[f][ii], at 111-79  ("if the majority of
the defendant's witnesses are in the proposed transferee district
while most of the plaintiff's witnesses are in neither district
and thus will have to travel regardless, transfer to enhance the
convenience of the defendant's witnesses may be granted")
(footnote omitted); cf. SEC v. Brooks, 1994 WL 369553, at *3-*4
(D.N.H. June 27, 1994) (denying motion to transfer SEC
enforcement action from New Hampshire where "at least half of the
defendants and many third-party witnesses" were located here).

Finally, the defendants argue that adjudicating this matter
in the District of Southern Florida will better serve the
interests of justice than adjudicating it here, essentially
because the alleged wrongdoing took place in southern Florida,
while New Hampshire's ties to it are minimal.  The plaintiffs
respond with the sweeping assertion that "[t]he Southern District
of Florida has no local interest in litigating [their] claims,"
while the District of New Hampshire "has a strong interest in
providing justice to those customers" who hail from this state.
Opp'n Mot. Transfer at 7.  The court disagrees.

While this forum certainly has an interest in hearing claims
that New Hampshire residents have been defrauded, such claims
represent only a small fraction of the malfeasance attributed to
the defendants, who are accused of similarly victimizing some 900

13

people out of $19 million through a large-scale boiler room operation.  To say that southern Florida, the site of this alleged operation in its entirety, has "no interest" in this litigation simply because "none of the victims . . . are [*sic*] known to reside" there, Opp'n Mot. Transfer at 6-7, is to betray a serious misunderstanding of the concept of "local interest." The District of South Florida, in fact, has a strong local interest in adjudicating this attempt to shut down such an operation within its jurisdiction, as well as in providing its citizens who have been named as defendants with an opportunity to defend themselves.  See Adam, 2005 WL 643358, at *4 (discerning Hawaii's "substantial interest" in outcome of case charging Hawaiian entities with race-based conspiracy and fraud).

Furthermore, the plaintiffs seek a variety of injunctive relief against the defendants, and have already obtained a temporary restraining order against them, which may necessitate further proceedings, such as contempt hearings.  The most appropriate and efficient place for such proceedings to occur is, again, in Florida, where the defendants and other potential witnesses can readily appear.  See KPMG, 2003 WL 1842871, at *4 (reasoning that SEC's request for injunction against corporate defendant's practices supported choosing site of headquarters as forum because any future violations would likely occur there). The court therefore concludes that the interests of justice favor transferring this case to the Southern District of Florida.

<u>Conclusion</u>

Based on the foregoing analysis, the court concludes that the balance of considerations relevant to the section 1404(a) inquiry weigh in favor of transferring this case to the United States District Court for the Southern District of Florida.  The defendants' motion to transfer (document no. 15) is therefore GRANTED.  The defendants' motion to stay (document no. 16), which they have sought in the alternative to transfer, is DENIED as moot.  The clerk shall transfer this matter to the United States District Court for the Southern District of Florida and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 22, 2006

cc:   Melanie M. Bell, Esquire
      Joseph A. Konizeski, Esquire
      Timothy J. Mulreany, Esquire
      John P. Sherman, Esquire
      Erik B. Weinick, Esquire
      Burke M. Wong, Esquie